No. 107,697

In the Matter of DAVID G. SHRIVER, *Respondent.*

(278 P.3d 964)

Opinion filed June 22, 2012.

*Stanton A. Hazlett,* Disciplinary Administrator, argued the cause, and was on the formal complaint for the petitioner.

*John J. Ambrosio,* of Ambrosio & Ambrosio, Chtd., Topeka, argued the cause, and *David G. Shriver,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, David G. Shriver, of Topeka, an attorney admitted to the practice of law in Kansas in 1975.

On September 2, 2011, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on September 12, 2011. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 20, 2011, when the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.3 (2011 Kan. Ct. R. Annot. 433) (diligence); 3.3(a)(1) (2011 Kan. Ct. R. Annot. 559) (candor toward tribunal); and 8.4(c) (2011 Kan. Ct. R. Annot. 618) (engaging in conduct involving misrepresentation).

The panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"6.    The Respondent drafted wills and trusts for each of his parents, Garner E. and Martha J. Shriver. In the wills, the Respondent was named as executor and trustee. The Respondent is one of three children. The Respondent has two sisters: Linda Shriver and Kay Kwon. The Respondent's father passed away on March 1, 1998.

"7.    From time to time, the Respondent sought and obtained bank loans to finance his law practice and his personal living expenses. After the Respondent's

father's death, the Respondent's bank loans were under-collateralized. The Respondent's mother agreed to have a $50,000 mortgage placed on her residence to serve as collateral on the Respondent's bank loans. The Respondent's mother did not request a promissory note to secure the Respondent's obligation. Rather, the Respondent's mother simply asked the Respondent to make sure that if he had not paid off the mortgage prior to her death, that upon her death, the Respondent take the mortgage into account in dividing the assets equally among the three children. The Respondent agreed.

"8.    Mrs. Shriver set up various certificate of deposit accounts. Mrs. Shriver included the Respondent and his sister, Linda, as signatories on the accounts. Mrs. Shriver informed the Respondent that she set up the accounts so that if he needed money, he could use those accounts. Additionally, Mrs. Shriver provided the Respondent with a power of attorney.

"9.    Using the power of attorney, the Respondent cashed two certificates of deposit, receiving $36,019.91. Again, Mrs. Shriver did not request that the Respondent provide a promissory note. Mrs. Shriver simply directed that the Respondent make it fair and equal with his sisters upon her death. Again, the Respondent agreed.

"10.    During her lifetime, Mrs. Shriver also provided financial assistance to Linda Shriver, Linda's children, and Kay Kwon.

"11.    On July 24, 2004, Mrs. Shriver passed away.

"12.    On August 16, 2004, the Respondent filed a petition for probate of will and issuance of letters testamentary. In the petition, the Respondent listed real property in the approximate value of $150,000 and personal property in the amount of $40,000.

"13.    On September 9, 2004, the Court appointed the Respondent to serve as the executor of his mother's estate. Accordingly, the Court issued letters testamentary to the Respondent.

"14. The Respondent failed diligently to bring the estate to closure. It took the Respondent two years to sell Mrs. Shriver's real property.

"15.    During the time the estate was pending, from time to time, Linda Shriver and Kay Kwon requested that the Respondent make distributions from the estate to them. The Respondent agreed and provided Linda Shriver and Kay Kwon with funds from the estate without seeking or obtaining court approval. Additionally, from time to time, the Respondent made distributions to himself, again without seeking or obtaining court approval.

"16.    On November 29, 2007, the Respondent filed an inventory and valuation. Pursuant to K.S.A. 59-1201, the inventory should have been filed within 30 days after the Respondent's appointment as executor of the estate. The Respondent filed the inventory and valuation more than three years after his appointment. The Respondent failed to include reference to the mortgage or the certificates of deposit in the inventory.

"17.    Thereafter, on April 28, 2009, the Respondent filed a petition for final settlement and an accounting. The Respondent failed to include the mortgage, certificates of deposit, and the distributions in the accounting.

"18. On November 4, 2008, Tammy M. Martin entered her appearance [on] behalf of Linda Shriver and Kay Kwon.

"19. On December 22, 2008, the Respondent filed a notice of filing closing statement.

"20. On June 15, 2009, Linda Shriver and Kay Kwon filed an objection to the petition for final settlement and accounting. In the objection, Linda Shriver and Kay Kwon argued that the Respondent failed to include all the certificates of deposit, the Respondent failed to include the mortgage, the Respondent paid funds to heirs without court approval, and the Respondent distributed the proceeds of the estate in an unequal fashion.

"21. Eventually, on April 14, 2010, the Respondent filed an amended inventory and valuation. In the amended inventory and valuation, the Respondent included the mortgage, the certificates of deposit ('oral promissory obligation of David Shriver'), and the distributions made to the three heirs.

"22. On August 20, 2010, the Court finally entered a journal entry of final settlement. In the journal entry, the Court entered a judgment against the Respondent, in favor of Kay Kwon in the amount of $4,650.00. Additionally, the Court entered a judgment against the Respondent, in favor of Linda Shriver in the amount of $15,000.00. Finally, the Court entered a judgment against the Respondent in favor of Ms. Martin in the amount of $5,000.00.

## "CONCLUSIONS OF LAW

"23. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 3.3(a)(1), and KRPC 8.4(c), as detailed below.

"24. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The Respondent failed to provide diligent representation to his mother's estate. The Respondent opened the estate in 2004 and it was not closed until 2010. Because the Respondent failed to act with reasonable diligence and promptness in representing his mother's estate, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"25. KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' The Respondent made false statements of material fact to the Court when he failed to include the mortgage, the certificates of deposit, and the distributions made to the heirs in the inventory and accounting. Because the Respondent provided false information to the Court, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1).

"26. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he filed an inventory and an accounting which did not include references to the mortgage, the certificates of deposit, and the distributions made to the heirs. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"27.   In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"28.   *Duty Violated.* The Respondent violated his duty to the public to maintain his personal integrity.

"29.   *Mental State.* The Respondent knowingly violated his duty.

"30.   *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal profession and his sisters.

"31.   *Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"32.   *Dishonest or Selfish Motive.* The Respondent's misconduct was motivated by dishonesty and selfishness. By failing to disclose the mortgage[,] the certificates of deposit, and the distributions made to the heirs, the Respondent put himself in a position to receive a greater distribution of the proceeds from his mother's estate than she intended.

"33.   *Multiple Offenses.* The Respondent violated KRPC 1.3, KRPC 3.3, and KRPC 8.4. As such, the Hearing Panel concludes that the Respondent committed multiple offenses.

"34.   *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law September 12, 1975. Thus, when the Respondent engaged in the misconduct, he had been practicing law for more than 30 years.

"35.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"36.   *Absence of a Prior Disciplinary Record.* During the Respondent's 30 year practice, he has not previously been disciplined.

"37.   *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent testified candidly regarding his misconduct at the hearing on the formal complaint.

"38.   *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent is an active and productive member of the bar. He enjoys the respect of his peers, friends, and clients and

generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"39. *Remorse.* At the hearing on the formal complaint, the Respondent expressed genuine remorse for having engaged in the misconduct.

"40. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

### "RECOMMENDATION

"41. The Disciplinary Administrator recommended that the Respondent be suspended from the practice of law for an indefinite period of time. Counsel for the Respondent recommended that the Respondent be censured and that the censure be published in the Kansas Reports.

"42. Based upon the findings of fact, conclusions of law, the significant mitigating circumstances, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of 90 days."

### DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster,* 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable.' " " *In re Lober,* 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis,* 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hearing before the panel and the hearing before this court. He filed no exceptions to the hearing panel's final hearing report. The panel's

findings of fact are thus deemed admitted, and we adopt them. See Supreme Court Rule 212(c), (d) (2011 Kan. Ct. R. Annot. 352).

The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore also adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline. At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator continued to recommend that the respondent be suspended indefinitely. The respondent continued to request censure and asked that the censure be published in the Kansas Reports. As referenced above, the hearing panel recommended that respondent be suspended from the practice of law for 90 days.

A majority of this court—after consideration of the seriousness of the respondent's violations, particularly those demonstrating a lack of candor, and the aggravating and mitigating factors—holds that a 6-month suspension from the practice of law is appropriate. A minority of this court would adopt the panel's recommendation of a 90-day suspension.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that David G. Shriver be suspended from the practice of law in the state of Kansas for 6 months, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2011 Kan. Ct. R. Annot. 280).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas reports.

NUSS, C.J., not participating.

REBECCA W. CROTTY, District Judge, assigned.